IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHAWNA M. NEUMEISTER,                    6:12-cv-02067-BR

        Plaintiff,                    OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

        Defendant.


LINDA S. ZISKIN
Ziskin Law Office
P.O. Box 753833
Las Vegas, NV 89136
(503) 889-0472

---

     [1] Carolyn W. Colvin became the Acting Commissioner of Social
Security on February 14, 2013.  Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Carolyn W. Colvin should be
substituted for Michael J. Astrue as Defendant in this case.  No
further action need be taken to continue this case by reason of
the last sentence of section 205(g) of the Social Security Act,
42 U.S.C. § 405.

1 - OPINION AND ORDER

**RICHARD A. SLY**
Attorney at Law
209 SW Oak Street
Suite 102
Portland, OR 97204
(503) 224-0436

            Attorneys for Plaintiff

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**LEISA A. WOLF**
Special Assistant United States Attorneys
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2531

            Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Shawna M. Neumeister seeks judicial review of a

final decision of the Commissioner of the Social Security

Administration (SSA) in which she denied Plaintiff's applications

for Disability Insurance Benefits (DIB) under Title II of the

Social Security Act and Supplemental Security Income (SSI)

payments under Title XVI.

     This Court has jurisdiction to review the Commissioner's

decision pursuant to 42 U.S.C. § 405(g).  Following a thorough

2 - OPINION AND ORDER

review of the record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** this matter for further administrative proceedings.

## ADMINISTRATIVE HISTORY

Plaintiff filed her applications for DIB and SSI on November 6, 2001. Tr. 59, 252, 904. The applications were denied initially and on reconsideration. Plaintiff requested a hearing. Tr. 904. Administrative Law Judge (ALJ) Charles Evans held a hearing on July 31, 2003. Tr. 17. on January 20, 2006, ALJ Evans issued a decision in which he found Plaintiff was not entitled to benefits. Tr. 28. Plaintiff sought review of the decision. Tr. 904. The Appeals Council granted Plaintiff's request and remanded the case for further proceedings. Tr. 904.

ALJ Evans held another hearing on May 18, 2006. Tr. 60. On January 20, 2006, ALJ Evans issued a second decision in which he again found Plaintiff was not entitled to benefits. Tr. 71-72, 904. Plaintiff sought review of the decision for a third time. Tr. 904. The Appeals Council granted Plaintiff's request and remanded the case to ALJ Dan Hyatt for further proceedings. Tr. 904.

ALJ Hyatt held a hearing on July 31, 2007. Tr. 24, 904. On December 8, 2007, ALJ Hyatt issued a third decision in which he found Plaintiff was not entitled to benefits. Tr. 40, 904.

Plaintiff sought review of the decision.  Tr. 904.  The Appeals
Council denied Plaintiff's request, and Plaintiff filed an appeal
with this Court.  Tr. 932 (*Neumeister v. Comm'r Social Security
Admin.*, No. 6:09-cv-00276-TC (D. Or. 2009).  Based on a
stipulation of the parties filed on May 24, 2010, the Court
reversed and remanded the case to the Commissioner for further
proceedings pursuant to sentence four of 42 U.S.C. § 405(g).
Tr. 932.  In its Order issued on May 25, 2010, the Court directed
the ALJ on remand to:

> [H]old a *de novo* hearing, take the following actions,
> and issue a new decision:
>
> * The ALJ should reassess the medical source
>   opinion evidence, providing legally
>   sufficient reasons for the weight given to
>   each opinion, including but not limited to
>   Drs. Ogisu, Goering, and Gustadisegni;
> * Obtain consultative examination from a board
>   certified rheumatologist;
> * Re-evaluate the claimant's credibility;
> * The ALJ should assess the lay witness
>   testimony;
> * The ALJ should assess the claimant's mental
>   and physical residual functional capacity,
>   incorporating all limitations included in the
>   medical evidence that is not specifically
>   rejected.
> * The ALJ shall obtain medical expert testimony
>   to assess the complicated combination of
>   impairments and possible pain syndrome with
>   some psychological elements; and
> * The ALJ shall obtain vocational expert
>   testimony to assist in determining whether
>   the claimant's limitations affect her ability
>   to perform work related activities at steps 4
>   and 5 of the sequential evaluation process.

Tr. 932-33.

4 - OPINION AND ORDER

After the case was remanded by this Court, the Appeals Council returned the case to ALJ Hyatt with instructions to:

> (1) give further consideration to the treating and examining source opinions and to explain the weight given to such opinion evidence;
> (2) further evaluate lay witness statements;
> (3) obtain additional evidence concerning the claimant's rheumatological impairment including a consultative examination and medical source statement "about what the claimant can still do despite the impairment," if warranted and available;
> (4) further evaluate Plaintiff's subjective complaints;
> (5) obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's impairments;
> (6) obtain evidence from a vocational expert (VE) to clarify the effect of the assessed limitations on Plaintiff's occupational base.

Tr. 940.

ALJ Hyatt (herein after referred to as the ALJ) held a fourth hearing on December 14, 2010.  Medical experts Ross Lipton, M.D., and Julie Frederick, Ph.D., and a VE testified at the hearing.  Tr. 905.

The ALJ issued a fourth decision on January 14, 2011, in which he found Plaintiff is not entitled to benefits.  Tr. 921. That decision became the final decision of the Commissioner on September 21, 2012, when the Appeals Council denied Plaintiff's request for review.  Tr. 889.  The ALJ's fourth decision is now before this Court.


## BACKGROUND

Plaintiff was born on January 30, 1974, and was 36 years old at the time of the December 14, 2010, hearing.  Tr. 919.

5 - OPINION AND ORDER

Plaintiff has a high-school education.  Tr. 919.  She has past relevant work experience as a fish processor, hand-package inspector, materials handler, and cashier.  Tr. 1067-69.

Plaintiff alleges she has been disabled since July 27, 1999, due to a closed head injury and neck injury that cause pain throughout her body.  Tr. 263.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 907-921.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a "mere scintilla" of evidence but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

7 – OPINION AND ORDER

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). *See also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  *See also Keyser*, 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as

Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis when the ALJ is determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

9 - OPINION AND ORDER

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since July 27, 1999, her alleged onset date.  Tr. 907.

At Step Two the ALJ found Plaintiff has the severe impairments of "myofascial pain syndrome versus fibromyalgia," a mild cognitive disorder, and mild depressive disorder.[2]  Tr. 907.

---

[2]    The Court notes the ALJ based his findings as to these impairments on the medical diagnoses of Plaintiff that appear in the record rather than statements in Plaintiff's applications. *See* Tr. 19, 109.

10- OPINION AND ORDER

At Step Three the ALJ found Plaintiff's impairments do not meet or equal the criteria for any impairment in the Listing of Impairments.  Tr. 910-911.  The ALJ found Plaintiff "has the residual functional capacity for modified light exertion with some nonexertional limitations. . . .  Exertionally, [Plaintiff] can lift and carry 10 pounds frequently and 20 pounds occasionally.  She can sit 8-hours [*sic*](cumulatively, not continuously) in an 8-hour workday with normal breaks.  She can stand and walk for up to 4-hours [*sic*] in each activity (cumulatively, not continuously) in an 8-hour workday with normal breaks.  She requires a sit-stand option allowing her to change between positions at will.  She does not need an ambulative assistance device.  Her manipulative nonexertional limitation is that she can occasionally reach, handle, push, pull.  She can occasionally use foot controls with her lower extremities, bilaterally.  Postural nonexertional limitations are that she can occasionally balance, stoop, kneel, and crouch.  However, she can never climb stairs/equivalent ramps, ropes, ladders, and scaffolding.  Her environmental nonexertional limitations are that she cannot work around hazards such as working at unprotected heights or around machinery with exposed moving parts.  She is also limited to simple, repetitive tasks."  Tr. 911-12.

At Step Five the ALJ found Plaintiff could perform jobs that

exist in significant numbers in the national economy such as a
hostess and a gate/guard attendant.  Tr. 920.  Accordingly, the
ALJ found Plaintiff is not disabled.


### DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed to
follow the district court's Order on remand to have Plaintiff
examined by a board-certified rheumatologist; (2) improperly
rejected the opinion of treating physician Edward K. Goering,
D.O.; (3) improperly rejected the lay-witness testimony of Emelie
Thompson; and (4) provided an incomplete hypothetical to the VE.

**I.    Order on Remand**

As noted, based on the stipulation of the parties, the
district court remanded this matter with instructions to the ALJ
to obtain, among other things, a "consultative examination from a
board certified rheumatologist."  Tr. 932.

Plaintiff asserts the ALJ failed to follow this instruction
and instead had Plaintiff examined by James Harris, M.D.,
M.S.P.H., who is not a board-certified rheumatologist.  The
Commissioner did not address this argument in her brief and,
therefore, in effect, concedes Plaintiff's assertion.  Although
the ALJ referred to Dr. Harris as a rheumatologist at the
hearing, Dr. Harris stated in a Medical Source Statement of
Ability to Do Work-Related Activities (Physical) dated October 7,

12- OPINION AND ORDER

2010, that his medical specialties were "INT MED" and "PREV MED."
Tr. 1021.  These notations presumably refer to "internal
medicine" and "preventative medicine" and, in any event, do not
establish Dr. Harris is a board-certified rheumatologist.

Accordingly, the Court concludes the ALJ failed to follow
district court's instruction to "obtain a consultative
examination from a board certified rheumatologist."

## II.  Medical Opinion of Dr. Goering

Plaintiff also contends the ALJ erred when he rejected the
opinion of Dr. Goering, her treating physician.

An ALJ may reject an examining or treating physician's
opinion when it is inconsistent with the opinions of other
treating or examining physicians if the ALJ makes "findings
setting forth specific, legitimate reasons for doing so that are
based on substantial evidence in the record."  *Thomas v.
Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v.
Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical
opinion of an examining or treating physician is uncontroverted,
however, the ALJ must give "clear and convincing reasons" for
rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v.
Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).  Generally the more
consistent an opinion is with the record as a whole, the more
weight an opinion should be given.  20 C.F.R. § 416.927(c)(4).

A nonexamining physician is one who neither examines nor

13- OPINION AND ORDER

treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

On November 3, 2013, Dr. Goering filled out a Medical Opinion Re: Ability to Do Work-Related Activities (Physical) form in which Dr. Goering opined Plaintiff can lift and carry less than ten pounds; can stand and walk for less than two hours in an eight-hour workday; can sit for two hours during an eight-hour workday; must periodically alternate between sitting, standing, or walking every ten to fifteen minutes; needs the "opportunity to shift at will from sitting or standing/walking"; and needs to lie down four to five times at unpredictable intervals during a workshift.  Tr. 1024-25.  Dr. Goering also opined Plaintiff can occasionally twist and climb stairs but should never stoop, bend, crouch, or climb ladders.  Tr. 1026.  Dr. Goering found Plaintiff is limited in her ability to reach, handle, finger, and feel and,

in addition, Plaintiff's "[h]ead injury has left her with [the] inability to compensate with change or to keep consistent work habits due to unanticipated physical failings." Tr. 1026. Dr. Goering also opined Plaintiff's impairments would likely cause her to be absent from work more than six times per month. Tr. 1027.

Other than incorporating a "sit-stand at-will" option into Plaintiff's RFC, the ALJ rejected the opinion of Dr. Goering and stated: "I find no evidence to support the RFC limitations listed by D.O. Goering." Tr. 914. The ALJ instead gave great weight to Dr. Harris's opinion that Plaintiff has the RFC for modified light-exertional work. Tr. 910. At the hearing, Dr. Lipton, medical expert, opined Dr. Harris's opinion as to Plaintiff's RFC was reasonable as a functional statement of her physical capabilities. Tr. 1044-45. The ALJ agreed with Dr. Lipton's opinion that Plaintiff's "impairments derived through established diagnostic techniques reflect that she can do modified light exertion in accordance with the recommendations of Dr. Harris." Tr. 91.

As noted, if an ALJ rejects a treating physician's opinion and finds it is inconsistent with the opinions of other treating or examining physicians, the ALJ must make "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278

F.3d 947, 957 (9ᵗʰ Cir. 2002)(quoting *Magallanes*, 881 F.2d at 751). Here, however, the ALJ only made general statements that he did not find evidence to support the RFC limitations listed by treating physician Dr. Goering and instead relied on the opinion of examining physician Dr. Harris. In other words, the ALJ did not provide specific reasons based on evidence in the record for rejecting the opinion of Dr. Goering.

Moreover, the ALJ's reliance on the opinion of Dr. Harris and Dr. Lipton's assessment of Dr. Harris's opinion is also legally deficient because, as noted, the district court ordered the ALJ to obtain on remand a consultative examination of Plaintiff by a board-certified rheumatologist and it does not appear that Dr. Harris meets this criteria.

Accordingly, the Court concludes on this record that the ALJ erred when he rejected Dr. Goering's opinion because the ALJ did not provide legally sufficient reasons supported by the record for doing so.

**III. Lay-Witness Statements**

Plaintiff contends the ALJ erred when he rejected the written statements of lay-witness Emelie Thompson.

When determining whether a claimant is disabled, the ALJ must consider lay-witness testimony concerning a claimant's limitations and ability to work. *Molina*, 674 F.3d at 1114. If the ALJ discounts the testimony of lay witnesses, he "must give

reasons that are germane to each witness." *Id.* (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). *See also Lester,* 81 F.3d at 834 (improperly rejected lay-witness testimony is credited as a matter of law).

Germane reasons for discrediting a witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012).

On December 6, 2001, Thompson stated in a Third Party Information on Activities of Daily Living and Socialization form that Plaintiff leaves home only a few times a week, visits friends or family only because she feels obligated, gets frustrated easily, does not take walks because she cannot balance well, limits her driving, prepares only quick meals, and "everything exhausts her." Tr. 314-25. On July 30, 2007, Thompson wrote in an additional statement that she tutored Plaintiff after Plaintiff's head injury, noticed Plaintiff had memory problems, and suspects Plaintiff has a mild traumatic brain injury. Tr. 108. The ALJ noted Thompson "is not a doctor, and therefore is not qualified to list a diagnosis as the cause of alleged limitation." The ALJ pointed out that there are not any "references by any treating or examining sources allowing for

17- OPINION AND ORDER

any significant mental functional limitations," and Plaintiff "has been assigned high GAFs by evaluators." Tr. 914. When evaluating Plaintiff's own testimony as to her memory problems, the ALJ noted Plaintiff "often presents with conversational and memory responses at diminished levels of functioning. However several evaluators have noted that those symptoms appear to be present only when needed." Tr. 913.

Although Plaintiff alleges the ALJ rejected Thompson's entire opinion because she is not a medical expert, the record reflects otherwise. The ALJ specifically stated he gave little weight to Thompson's statements on the grounds that they were inconsistent with the medical evidence and "merely repetitions of the claimant's subjective claims, mostly which are the product of exaggeration and focus on obtaining disability." Tr. 914. The Court also notes Plaintiff did not object to the ALJ's finding that Plaintiff was not entirely credible as to the limiting effects of her alleged symptoms. Tr. 913-14.

Accordingly, the Court concludes on this record that the ALJ provided reasons germane to Thompson supported by substantial evidence in the record for giving little weight to Thompson's statements.

## IV. Hypothetical to the VE

As noted, the ALJ evaluated Plaintiff's RFC as including a limitation to performing simple, routine tasks. Tr. 911-12.

Plaintiff, however, contends the ALJ's hypothetical to the VE was inadequate because it did not contain that limitation.  The Court agrees.

In addition, the Court has concluded the ALJ erred when he failed to obtain a consultative examination by a board-certified rheumatologist, which may have affected the ALJ's assessment of Plaintiff's RFC and, in turn, the ALJ's hypothetical posed to the VE.

**<u>REMAND</u>**

The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *See, e.g., Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1164 (9th Cir. 2012).  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

The Ninth Circuit has established a three-part test for determining when evidence should be credited and an immediate award of benefits directed.  *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).  The court should

19- OPINION AND ORDER

grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See, e.g.,* *Harman v. Apfel*, 211 F.3d 1172, 1178 n.2 (9th Cir. 2000).

On this record the Court concludes further proceedings are necessary because it is not clear whether the ALJ would have found Plaintiff can perform her past relevant work or other work that exists in significant numbers in the national economy if the ALJ had obtained the consultative examination of a board-certified rheumatologist and properly considered the opinion of Dr. Goering.

Based on the foregoing, the Court concludes a remand for further proceedings consistent with this Opinion and Order is required to permit the ALJ to (1) obtain a consultative examination of a board-certified rheumatologist, (2) to reconsider the opinion of Dr. Goering in light of the results of the board-certified rheumatologist's consultative examination, and (3) to consider whether any new findings made by the ALJ alter his evaluation of Plaintiff's RFC or affect his decision as

20- OPINION AND ORDER

to whether Plaintiff can return to her past relevant work or is capable of performing other work that exists in significant numbers in the national economy.

### CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 23rd day of January, 2014.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

21- OPINION AND ORDER